# 26-cr-62

_____

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
HONORABLE ANNE M. NARDACCI

_____

UNITED STATES OF AMERICA,

                         Appellee,

-v-

CARLOS JAVIER ESPINOZA-CABRERA,

                         Defendant-Appellant.

_____

ON APPEAL FROM A JUDGMENT OF A MAGISTRATE JUDGE
FOR THE NORTHERN DISTRICT OF NEW YORK

---

**Memorandum of Law on Appeal for Defendant-Appellant
Carlos Javier Espinoza-Cabrera**

---

Timothy E. Austin
Assistant Federal Public Defenders
54 State Street, Suite 310
Albany, New York 12207
(518) 436-1850

James P. Egan
Assistant Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
(315) 701-0080

**Table of Contents**

Table of Authorities ....................................................................................................ii

Introduction ............................................................................................................. 1

Jurisdictional Statement ........................................................................................ 3

Statement of the Issues Presented ....................................................................... 3

Statement of the Case ............................................................................................ 4

    A.   Espinoza-Cabrera is found in the Northern District of New York several
        years after entering the country near Miami, Florida. .................................. 4

    B.   The Magistrate Judge denies Espinoza-Cabrera's motion to dismiss the
        complaint ........................................................................................................ 4

    C.   Espinoza-Cabrera is convicted of Illegal Entry following a bench trial on
        stipulated facts and sentenced to time served. ............................................. 6

Argument ................................................................................................................ 8

I.  Because Espinoza-Cabrera entered the country in Florida, venue was improper
    in the Northern District of New York. .................................................................. 8

    A.  Standard of Review ........................................................................................... 8

    B.  Discussion ........................................................................................................ 8

II. The evidence was insufficient to establish that Espinoza-Cabrera knowingly
    eluded examination or inspection at any time or any place. ............................... 21

    A.  Standard of Review ......................................................................................... 21

    B.  Discussion ...................................................................................................... 21

        1.  There is no evidence that Espinoza-Cabrera came into the country
            through an open port of entry. .................................................................. 23

        2.  There is no evidence that Espinoza-Cabrera knowingly engaged in an act
            of eluding. ................................................................................................ 24

        3.  There is no evidence that Espinoza-Cabrera eluded examination and
            inspection on November 1, 2025. ............................................................. 25

Conclusion .............................................................................................................. 26

Certificate of Service ............................................................................................. 27

i

## Table of Authorities

**Cases**

*Dubin v. United States,*
  599 U.S. 110 (2023) ........................................................................... 12

*United States v. Davis,*
  689 F.3d 179 (2d Cir. 2012) ............................................................... 9

*In re Winship,*
  397 U.S. 358 (1970) ........................................................................... 22

*Jackson v. Virginia,*
  443 U.S. 307 (1979) ........................................................................... 22

*Johnston v. United States,*
  351 U.S. 215 (1956) ........................................................................... 16

*Loughrin v. United States,*
  573 U.S. 351 (2014) ........................................................................... 17

*McCarthy v. New York City Technical College of City Univ. of New York,*
  202 F.3d 161 (2d Cir. 2000) ............................................................... 21

*McDonnell v. United States,*
  579 U.S. 550 (2016) ........................................................................... 17

*New York Central & H.R. Co., v. United States,*
  166 F. 267 (2d Cir. 1908) ................................................................... 16

*Sturgeon v. Frost,*
  577 U.S. 424 (2016) ........................................................................... 17

*Toussie v. United States,*
  397 U.S. 112 (1970) ........................................................................... 15

*Travis v. United States,*
  364 U.S. 631 (1961) ........................................................................... 10

*United States v. Autori,*
  212 F.3d 105 (2d Cir. 2000) ............................................................... 22

*United States v. Bailey,*
  444 U.S. 394 (1980) ........................................................................... 18

*United States v. Calonge,*
74 F.4th 31 (2d Cir. 2023) .................................................................. 9, 10

*United States v. Cavillo-Rojas,*
510 F. App'x 238 (4th Cir. 2013) ............................................................ 13

*United States v. Cores,*
356 U.S. 405 (1958) ............................................................................. 13

*United States v. Corrales-Vazquez,*
931 F.3d 944 (9th Cir. 2019) ........................................... 10, 11, 14, 17, 19, 23, 25

*United States v. Cuadro Soto,*
2026 WL 123220 (D. Neb. Jan. 16, 2026) ................................................ 13, 21

*United States v. DiSantillo,*
615 F.2d 128, (3d Cir. 1980) ................................................................. 20

*United States v. Glenn,*
312 F.3d 58 (2d Cir. 2002) ................................................................... 23

*United States v. Guldi,*
141 F.3d 145 (2d Cir. 2025) ................................................................. 21

*United States v. Martinez,*
54 F.3d 1040 (2d Cir. 1995) ................................................................. 22

*United States v. Ongaga,*
820 F.3d 152 (5th Cir. 2016) ................................................................ 20

*United States v. Panebianco,*
543 F.2d 447 (2d Cir. 1976) ................................................................. 10

*United States v. Pierce,*
224 F.3d 158 (2d Cir. 2000) ................................................................. 21

*United States v. Rasheed,*
981 F.3d 187 (2d Cir. 2020) ................................................................. 18

*United States v. Rincon-Jimenez,*
595 F.2d 1192 (9th Cir. 1979) .......................................................... 13, 18, 24

*United States v. Rodriguez-Moreno,*
526 U.S. 275 (1999) ........................................................................... 10

iii

*United States v. Rojas,*
  718 F.3d 1317 (11th Cir. 2013) .................................................................. 20

*United States v. Tzolov,*
  642 F.3d 314 (2d Cir. 2011) .................................................................... 8

*United States v. Vega,*
  2025 WL 3558747 (D. Me. Dec. 12, 2025) ...................................... 14, 24

**Statutes**

8 U.S.C. § 1222 ............................................................................................ 23
8 U.S.C. § 1225 ...................................................................................... 18, 23
8 U.S.C. § 1325(a)(1) ........................................................................ 1, 11, 17
8 U.S.C. § 1325(a)(2)...................................................................... *passim*
8 U.S.C. § 1325(a)(3) ........................................................................ 1, 11, 23
8 U.S.C. § 1326............................................................................. 12, 16, 19, 20
8 U.S.C. § 1329............................................................................................ 19, 20
18 U.S.C. § 3401 ......................................................................................... 3
18 U.S.C. § 3402 ......................................................................................... 3
28 U.S.C. § 636 .......................................................................................... 3

Immigration Act of 1990,
  Pub. L. No. 101-649, § 543(b)(1), 104 Stat. 4978.................................... 3

The Undesirable Aliens Act of 1929,
  Pub. L. No. 70-1018, § 5094, 25 Stat. 1551........................................... 3

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 3................................................................ 9, 20
U.S. Const. amend. VI ............................................................................... 9

**Federal Rules**

Fed. R. Crim. P. 12 .................................................................................... 5
Fed. R. Crim. P. 18 .................................................................................... 9
Fed. R. Crim. P. 58 .................................................................................. 8, 21

**Federal Regulations**

8 C.F.R. § 235.1 ..................................................................................... 18-19

**Other**

Eric S. Fish & Doug Keller, *Fabricating the Crime of Undocumented Presence*, 19–20, 50 (Nov. 14, 2025) (draft), https://ssrn.com/abstract=5750862.)  .................... 20

National Archives, RG 85, S.A. Andretta, Administrative Assistant Attorney General, Letter to Argyle R. Mackey, INS Commissioner, Nov. 24, 1952.  .........  12

National Archives, RG 85, Arglye Mackey, INS Commissioner, Interpretation of Section 276 of the Immigration and Nationality Act, May 21, 1953.  ................... 12

Memorandum from J. Harmon, Assistant Atty. Gen., Office of Legal Counsel, Re: Immigration and Nationality Act (8 U.S.C. § 1329)—Eluding Inspection—Criminal Offense—Venue (May 18, 1978)  ..................................................... 2, 12

Memorandum from M. Scott Proctor, Deputy Assistant Attorney General, Office of Legal Counsel, Re: Whether Eluding Inspection Under 8 U.S.C. § 1325(a)(2) Is a Continuing Offense (June 21, 2025)  ................................................................ 2

U.S. Attorneys' Manual, at 77 (1953)  ...................................................................... 12

## Introduction

8 U.S.C. § 1325(a) addresses three ways of "Improper entry by alien": (1) "improper time or place"; (2) "avoidance of examination or inspection"; and (3) "misrepresentation and concealment of facts."[1]   Congress created three separate offenses criminalizing these three ways an alien commits Illegal Entry.   First, an alien who "enters or attempts to enter the United States at any time or place other than as designated by immigration officers" violates § 1325(a)(1).   Second, an alien who "eludes examination or inspection by immigration officers" violates § 1325(a)(2). And third, an alien who "attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact" violates § 1325(a)(3).[2]

---

[1] Congress first made it a crime for an alien to unlawfully enter the country in 1929 as part of The Undesirable Aliens Act, Pub. L. No. 70-1018, § 5094, 25 Stat. 1551 (1929). The current form of 8 U.S.C. § 1325 was enacted in 1952.  Congress added attempt liability in the Immigration Act of 1990, Pub. L. No. 101-649, § 543(b)(1), 104 Stat. 4978, 5059.

[2] In full, 8 U.S.C. § 1325 provides:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under Title 18 or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under Title 18, or imprisoned not more than 2 years, or both.

1

In 2025, the Office of Legal Counsel ("OLC") issued a memorandum[3] claiming that Illegal Entry committed by an alien who "eludes examination or inspection" is a continuing offense.  This interpretation reversed the decades-long position of the OLC[4] and broke with an unbroken executive, legislative, and judicial understanding that Illegal Entry in any form is *not* a continuing offense.

These companion cases (involving Franklin Amadeo Tenecela-Aguaiza (26-cr-61 (ANM) and Carlos Javier Espinoza-Cabrera (26-cr-62 (AMN))[5] appear to be the first appeals to test the administration's push to criminalize the presence in the United States of undocumented (and previously unremoved) immigrants, wherever and whenever found, through this novel interpretation of § 1325(a)(2).  Because the government's interpretation – adopted by the Magistrate Judge – is wrong for the several reasons explained more fully below, this Court should vacate the judgment and dismiss the information.

---

[3] *See* Memorandum from M. Scott Proctor, Deputy Assistant Attorney General, Office of Legal Counsel, Re: Whether Eluding Inspection Under 8 U.S.C. § 1325(a)(2) Is a Continuing Offense (June 21, 2025) ("2025 OLC Mem.").

[4] *See* Memorandum from J. Harmon, Assistant Atty. Gen., Office of Legal Counsel, Re: Immigration and Nationality Act (8 U.S.C. § 1329)—Eluding Inspection—Criminal Offense—Venue (May 18, 1978).

[5] In a text order issued on February 24, 2026, Judge D'Agostino reassigned this case to this Court to be decided together with 26-cr-61 because "the cases are related and the bench trials were held together."  Although the defendants file separate briefs, the arguments advanced in support of vacating each judgment and dismissing each information are the same.

2

## Jurisdictional Statement

This appeal is taken from a judgment of conviction entered against the Defendant-Appellant Carlos Javier Espinoza-Cabrera in the United States District Court for the Northern District of New York, by the Honorable Gary L. Favro, United Sates Magistrate Judge, on February 12, 2025. A 84.[6]  The Magistrate Judge had subject matter jurisdiction, pursuant to 28 U.S.C. § 636(a)(3)(5), 18 U.S.C. § 3401, and Rule 58 of the Federal Rules of Criminal Procedure, because this was a criminal case alleging a petty offense, namely a first violation of 8 U.S.C. § 1325(a)(2). A 6, 49. Jurisdiction in this appeal is therefore invoked in this Court pursuant to 18 U.S.C. § 3402 and Rule 58(g)(2)(B) of the Federal Rules of Criminal Procedure. Espinoza-Cabrera filed a timely notice of appeal on February 20, 2026. A 88.

## Statement of the Issues Presented

1.      Whether venue to prosecute a violation of 8 U.S.C. § 1325(a)(2) is improper in the Northern District of New York when Espinoza-Cabrera entered the country near Miami, Florida.

2.      Whether the evidence was insufficient to establish Espinoza-Cabrera's guilt under 8 U.S.C. § 1325(a)(2) when the government failed to prove he knowingly (a) entered through a port of entry; (b) committed an eluding act when initially

---

[6] Citations to the Appendix (A) attached hereto are to the page numbers inserted therein.

Case 8:26-cr-00062-AMN    Document 3    Filed 03/09/26    Page 10 of 33

entering the country; and (c) eluded examination or inspection on November 1, 2025, as charged in the information.

**Statement of the Case[7]**

**A.    Espinoza-Cabrera is found in the Northern District of New York several years after entering the country near Miami, Florida.**

Carlos Javier Espinoza-Cabrera is a citizen of Ecuador.  A 56. On an unknown date, he flew from Ecuador to Panama and then from Panama to the Bahamas, where he traveled on a fishing boat to Florida in September 2021.  A 57.  Sometime later, he entered the country at an unknown location near Miami, Florida.  A 57.

On November 1, 2025, members of the Ogdensburg Police Department initiated a vehicle stop in St. Lawrence County, New York, where they discovered Espinoza-Cabrera and Franklin Amadeo Tenecela-Aguaiza.  A 56.  A Border Patrol Agent responded to the stop and interviewed both men.  Espinoza-Cabrera admitted he is an alien lacking authorization to be in the United States.  A 56.  He was then transported to the Ogdensburg Border Patrol Station, where he told agents about his journey from Ecuador to the United States.  A 57.  An investigation disclosed neither a record of Espinoza-Cabrera's legal admission into the United States nor any record that he had been previously inspected or examined by immigration authorities.  A 57.

**B.    The Magistrate Judge denies Espinoza-Cabrera's motion to dismiss the complaint.**

---

[7] The factual information contained herein is taken from the charging documents and the Trial Stipulation.

4

On November 5, 2025, a Border Patrol Agent filed a criminal complaint alleging Espinoza-Cabrera and Tenecela-Aguaiza violated 8 U.S.C. § 1325(a)(2) when they "entered the United States at a place not authorized for the entrance of immigrants and unlawfully eluded examination or inspection by Immigration officials." A 6.

On November 14, 2025, Espinoza-Cabrera and Tenecela-Aguaiza, who were both represented by the Office of the Federal Public Defender, filed a joint motion to dismiss the criminal complaint, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure. A 8. As relevant here, Espinoza-Cabrera argued that venue was improper in the Northern District of New York because he was alleged to have entered the country in the Southern District of Florida, and § 1325(a)(2) is not a continuing offense. A 10-14. Even if venue were proper, Espinoza-Cabrera also urged dismissal because the criminal complaint failed to (1) allege an act establishing that he knowingly eluded examination or inspection; (2) allege and specify that he knowingly entered through a port of entry; or (3) prove he knowingly failed to submit to examination or inspection on November 1, 2025. A 14-16.

The Magistrate Judge issued a decision denying the joint motion on December 10, 2025. According to the Magistrate Judge, the "threshold issue in this case is a determination as to whether or not 8 USC § 1325(a)(2) is a continuous act or a single act which occurs upon the illegal entry into the United States by an alien." A 42.

5

After making a few observations about the statute, the Magistrate Judge held that "the act of eluding examination or inspection by immigration officers occurs each and every day when a person who has entered the country illegally fails to submit to inspection or examination by immigration officials." A 43. Based on that determination, the Magistrate Judge held that § 1325(a)(2) is "a continuous offense by virtue of an interpretation of the plain meaning and intent of the statute even though 'continuous' language is not utilized in the statute." A 43. Accordingly, the Magistrate Judge denied Espinoza-Cabrera's motion in full. A 44.

## C. Espinoza-Cabrera is convicted of Illegal Entry following a bench trial on stipulated facts and sentenced to time served.

On December 11, 2025, the government filed separate informations respectively charging Espinoza-Cabrera and Tenecela-Aguaiza with Improper Entry by Alien. As relevant here, the information alleged:

> On or about November 1, 2025, in St. Lawrence County in the Northern District of New York, the defendant, **CARLOS JAVIER ESPINOZA-CABRERA**, an alien, eluded examination and inspection by immigration officers, in violation of Title 8, United States Code, Section 1325(a)(2).

A 49.

Prior to trial, the parties executed a Trial Stipulation. According to the Trial Stipulation, a conviction under 8 U.S.C. § 1325(a)(2) required the government to prove beyond a reasonable doubt that "(1) the defendant was an alien; and (2) the defendant knowingly eluded examination or inspection by immigration officers." A

6

56. The Trial Stipulation summarized background information concerning Espinoza-Cabrera's citizenship, travel to the United States, and apprehension on November 1, 2025. A 56-57. The parties also stipulated Espinoza-Cabrera had no "documentation allowing him to be lawfully present in the United States," "had no contacts with federal officials for any immigration-related purpose prior to his encounter with Border Patrol Agents on November 1, 2025," and there was "no record of the defendant engaging with United States immigration authorities to seek legal status for remaining in the United States after he entered illegally in Miami." A 56-57.

The Magistrate Judge held a joint bench trial on February 12, 2026. Espinoza-Cabrera confirmed the facts contained in the Trial Stipulation were "true and accurate," he understood the charge, and he was knowingly and voluntarily waiving certain trial rights. A 73-74, 75-76.

After adopting the arguments advanced in the motion to dismiss, the reply, and the trial brief, defense counsel reasserted that venue was improper and the evidence failed to establish Espinoza-Cabrera's guilt beyond a reasonable doubt. A 77-78.

The Magistrate Judge received the Trial Stipulation and adjudged Espinoza-Cabrera guilty of violating 8 U.S.C. § 1325(a)(2). A 79. At the same time, the Magistrate Judge noted that Espinoza-Cabrera was "not waiving any arguments set forth in the prior motion to dismiss and . . . all rights of appeal have been preserved

7

with regard to the prior motion to dismiss . . . ."  A 79.  The Trial Stipulation also confirmed Espinoza-Cabrera's challenge to the criminal complaint applies equally to the information and preserves those arguments for appeal. A 59-60.

The Magistrate Judge then proceeded to sentencing and, after hearing from the parties, sentenced Espinoza-Cabrera to time served, no fine, and remitted the special assessment.  A 81, 84-86.

### Argument

### I.    Because Espinoza-Cabrera entered the country in Florida, venue was improper in the Northern District of New York.

### A.    Standard of Review

"The scope of the appeal [from a judgment issued by a magistrate] is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).  "Where, as here, the facts are not in dispute, venue challenges raise questions of law, which [the Second Circuit] review[s] de novo." *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011).  Therefore, this Court should review *de novo* whether the stipulated facts established venue.

### B.    Discussion

The United States Constitution guarantees a defendant the right to be tried in the state and district in which the charged crime "shall have been committed." U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall

8

have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."); *id.* amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ."). *See also* Fed. R. Crim. P. 18. ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed.").

"The requirement derives from colonial grievances against the Crown, which had sometimes transported American colonists across the sea to stand trial in England." *United States v. Davis*, 689 F.3d 179, 185 (2d Cir. 2012) (citation omitted). "The purpose of these provisions is to 'protect defendants from the bias and inconvenience that may attend trial in a forum other than one in which the crime was committed.'" *United States v. Calonge*, 74 F.4th 31 (2d Cir. 2023) (citations omitted).

Given this constitutional grounding, venue "should not be so freely construed as to give the Government the choice of 'a tribunal favorable' to it." *Travis v. United States*, 364 U.S. 631, 634 (1961). "[Q]uestions of venue are more than matters of mere procedure. 'They raise deep issues of public policy in the light of which legislation must be construed.'" *Id.* (quoting *United States v. Johnson*, 323 U.S. 273, 275 (1944)).

In this case, "[v]enue turns on whether any part of the crime was committed

9

within" the Northern District of New York. *United States v. Panebianco*, 543 F.2d 447, 455 (2d Cir. 1976). To determine where venue is appropriate, this Court "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). During this process, courts must "separate 'essential conduct elements' from 'circumstance element[s].' Only essential conduct elements provide the basis for venue. To determine the nature of the offense, and which acts constitute 'essential conduct elements,' [courts] must look to the relevant statutory language including, though not exclusively, the verbs the statute uses." *Calonge*, 74 F.4th at 35 (cleaned up).

Congress first rendered it a crime for an alien to "elude[ ] examination or inspection" in 1929. Then, "as today, the verb 'elude' was more commonly used to mean 'avoid slyly, by artifice, stratagem, or dexterity,' or 'escape from in a covert manner.'" *United States v. Corrales-Vazquez*, 931 F.3d 944, 949 (9th Cir. 2019) (citations omitted). To elude "generally contemplates a risk of exposure to, and subsequent escape from, the object being eluded." *Id*. Accordingly, an alien eludes examination or inspection only if:

> the alien's conduct occurs at a time and place where the alien is at risk of undergoing those processes in the first place. Because those processes occur at open and operating ports of entry, the alien's criminal conduct—the "elud[ing]"—must occur there as well. This would include, for example, an alien who hides in the trunk of a vehicle passing through a port of entry, or an alien who crosses through a port of entry on foot and

10

> then sneaks by the officers conducting inspections or examinations. But it would not include an alien who crosses the border miles away from any place where those processes occur.

*Id.* at 949. Once an alien slyly avoids the examination or inspection process through a port of entry, the offense is complete. The alien has eluded the examination or inspection because the improper entry has occurred. No remaining acts constitute the offense. Venue, therefore, is only proper in the district where entry occurred.

This plain meaning of "eludes" is supported by statutory context. The entirety of Section 1325(a) works as "seamless whole" to "cover entry in any manner":

> § 1325(a)(2) follows § 1325(a)(1), which separately makes it a crime to 'enter[ ] or attempt[ ] to enter the United States at any time or place other than as designated by immigration officers.' And § 1325(a)(2) precedes § 1325(a)(3), which makes it a crime to enter or attempt to enter the United States "by a willfully false or misleading representation or the willful concealment of a material fact." Considered together, these three provisions—which carry identical criminal penalties—are "broad enough to cover entry in any manner." H.R. Rep. No. 70-2418, at 4. Section 1325(a)(1) covers aliens who enter or attempt to enter outside of an open port of entry. Section 1325(a)(2) covers aliens who cross through an open port of entry, but elude examination or inspection in doing so. And § 1325(a)(3) covers aliens who cross through an open port of entry and submit to examination and inspection, but obtain entry (or attempt to obtain entry) through willful misrepresentation or concealment.

*Id.* at 950 (cleaned up).

This interpretation is further buttressed by the statute's title, "Improper entry by alien." The Supreme Court has noted that "'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 120-121 (2023) (cleaned up). Any

11

ambiguity about the interpretative breadth of "eludes" would be restricted by the statute's title, which makes plain Congress's sole concern with "entry."

Legislative history further clarifies that Section 1325(a)(2) is not a continuing offense. Section 1325(a) was enacted to criminalize aliens who "enter the United States surreptitiously" and was "broad enough to cover entry in any manner." H.R. Rep. No. 70-2418, at 4, 8 (1929). Unlike the "found in" provision of 8 U.S.C. § 1326, Section 1325(a) in its entirety is concerned solely with entry, not presence.

Given this background, it should come as no surprise that, at least since 1952, the Executive Branch understood that each Section 1325(a) offense could only be prosecuted in the district of entry. *See* National Archives, RG 85, S.A. Andretta, Administrative Assistant Attorney General, Letter to Argyle R. Mackey, INS Commissioner, Nov. 24, 1952. This understanding was accepted and adopted by the INS Commissioner in 1953. *See* National Archives, RG 85, Arglye Mackey, INS Commissioner, Interpretation of Section 276 of the Immigration and Nationality Act, May 21, 1953. And it was codified in the United States Attorney's Manual in 1953, *see* U.S. Attorneys' Manual, at 77 (1953). And in 1978, the Office of Legal Counsel confirmed that Section 1325(a)(2) is a non-continuing offense, as a district court had then recently held. *See* Memorandum from J. Harmon, Assistant Atty. Gen., Office of Legal Counsel, Re: Immigration and Nationality Act (8 U.S.C. § 1329)—Eluding Inspection—Criminal Offense—Venue (May 18, 1978).

12

Moreover, courts have consistently held that all offenses criminalized by Section 1325(a) are non-continuing. For example, in *United States v. Cores*, 356 U.S. 405, 405 n.6 (1958), the Supreme Court noted in *dicta* that Section 1325(a) offenses "are not continuing ones, as 'entry' is limited to a particular locality and hardly suggests continuity." Courts of Appeals have confirmed this understanding. *See United States v. Rincon-Jimenez*, 595 F.2d 1192, 1193 (9th Cir. 1979) (finding "no reason to interpret this criminal statute in a manner that avoids commencing the running period of the statute of limitations as of the time of the illegal entry."); *United States v. Cavillo-Rojas*, 510 F. App'x 238, 248 (4th Cir. 2013) ("[a] § 1325(a) offense is completed at the time of the defendant's illegal entry, and the statute of limitations begins running at that point.").

And courts have continued to do so despite the OLC's interpretive change. For example, in *United States v. Cuadro Soto*, 2026 WL 123220 (D. Neb. Jan. 16, 2026), venue in the District of Nebraska was found improper where a defendant apprehended in Nebraska was charged with violating § 1325(a)(2) by crossing from Mexico into Texas. These same reasons were also relied upon in *United States v. Vega*, 2025 WL 3558747 (D. Me. Dec. 12, 2025), in rejecting the government's attempt to charge a defendant in the District of Maine who had entered the country through Texas.

13

The Magistrate Judge and the government confronted none of this below. Instead, the Magistrate Judge by *ipse dixit* asserted "the act of eluding examination or inspection by immigration officers occurs each and every day when a person who has entered the country illegally fails to submit to inspection or examination by immigration officials." A 43. Likewise, the government, apparently relying on the OLC's new interpretation, sought to push the word "eludes" to its furthest possible reach, contending that Section 1325(a)(2) establishes a "duty for aliens to submit to inspection [that] is continuing." A 24. However, "not every 'word in a statute extends to the outer limits of its definitional possibilities.'" *Corrales-Vazquez*, 931 F.3d at 948 (quoting *Abuelhawa v. United States*, 556 U.S. 816, 820 (2009)). In any case, both interpretations rob any meaning from the term "eludes."

Moreover, Congress rejected this possibility when enacting Section 1325(a). *See* Proposed Deportation Legislation: Hearing Before the H. Comm. on Immigration & Naturalization, 68th Cong. 9 (1924) (noting that use of the verb "elude" rather than "enter" would ensure an alien could not be convicted for entering through a port "in good faith" without examination or inspection). And if Congress meant to criminalize an alien's mere entry without inspection, it could have simply retained the predecessor version which criminalized "enter[ing] without inspection." *See Corrales-Vasquez*, 931 F.3d at 949 n.5 (citing 39 Stat. at 889). "Congress's decision not to use [this] 'ready alternative' in § 1325(a)(2) 'indicates that Congress did not in fact want'

14

this particular provision of the statute to be as broad as the government claims." *Id.* (quoting *Advocate Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017)).

Even if the government were correct that § 1325(a)(2) criminalizes a failure to submit to examination and inspection, statutes criminalizing the mere failure to act are non-continuing.  For example, in *Toussie v. United States*, 397 U.S. 112 (1970), the Supreme Court held that the defendant's conviction for failing to register for the draft violated the statute of limitations because the offense was non-continuing.  As the *Toussie* Court explained, a crime should not be considered a continuing offense "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one."  *Id.* at 115.  Guided by the principle that the "doctrine of continuing offenses should be applied in only limited circumstances" and, as such, "are not to be too readily found," *id.*, the *Toussie* Court observed that there is "nothing inherent in the act of registration itself which makes failure to do so a continuing crime."  *Id.* at 122.

Like the offense in *Toussie*, § 1325(a)(2) contains no explicit direction from Congress that the offense was intended to be a continuing one. And just like in *Toussie*, there is nothing in the nature of the failure to submit to examination or inspection (assuming *arguendo* that § 1325(a)(2) criminalizes a mere failure to submit) that Congress must assuredly have intended that it be treated as a

15

continuing one.  This is especially true where Congress included a continuing offense – "found in" – in § 1326, but not § 1325.

Likewise, the Supreme Court has adopted "the general rule that where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime."  *Johnston v. United States*, 351 U.S. 215, 220 (1956).  Therefore, even if § 1325(a)(2) criminalizes the mere failure to submit to examination or inspection, which Espinoza-Cabrera does not concede, venue would only be proper at a port of entry when he first entered the country.  *See also New York Central & H.R. Co., v. United States*, 166 F. 267 (2d Cir. 1908) ("The offense consists in the failure to do a single act in a single place, to wit, to file a schedule in Washington.").

Long-standing rules of statutory interpretation further compel the rejection of the government's novel approach.  To begin with, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (cleaned up).  Indeed, statutory context may "compel[ ] a more circumscribed reading."  *McDonnell v. United States*, 579 U.S. 550, 567 (2016).

Two additional canons of statutory construction require a more bounded interpretation here.  First, the Magistrate Judge's and government's interpretation violates "the 'cardinal principle' of interpretation that courts 'must give effect, if

16

possible, to every clause and word of a statute.'" *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quotations omitted). If merely entering without examination or inspection violates Section 1325(a)(2), and continues for as long as the alien has not submitted to examination or inspection, "much of the highly specific language in § 1325(a)(1) would be superfluous—any alien who 'enters . . . the United States at any [non-designated] time or place' under § 1325(a)(1) would also be guilty of 'elud[ing] examination or inspection' under § 1325(a)(2)." *Corrales-Vazquez*, 931 F.3d at 950.

Second, the reading adopted below would render Section 1325(a)(1) "not only superfluous but subsumed *entirely* within § 1325(a)(2)." *Id*. This is because "every violation of § 1325(a)(1) for entering at a non-designated time or place would have also been a violation of § 1325(a)(2) for eluding examination or inspection." *Id*. But "general language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment.'"" *Id*. (quotations omitted). The weight given to this canon of interpretation is especially strong when the two provisions are part of the same statutory scheme. *Id*. (citations omitted).

The government cobbled together various arguments in an attempt to support its expansive reading. None helps. The government contended that eluding is synonymous with the crime of escaping. To be sure, the Supreme Court has held that escape is a continuing offense for statute of limitations purposes. *See United States*

17

*v. Bailey*, 444 U.S. 394, 399 (1980). But an alien unlawfully entering the country is not *escaping from* anything, and certainly not a prison. Accordingly, even if Section 1325(a)(2) imposed a duty to submit to examination or inspection, the better analogy would be the failure to report to prison, for which venue is proper in the reporting district, not where the defendant is found. *See United States v. Rasheed*, 981 F.3d 187, 193-94 (2d Cir. 2020).

The government's reliance on 8 U.S.C. § 1225 fares no better. It is true, as the government suggests and this case proves, that an inspection can technically occur anywhere and at any time, because an alien "who arrives in the United States" is "deemed" an "applicant for admission." However, the procedures referenced in Section 1325(a)(2) are conducted "at the time of entry, a fixed point in time." *Rincon-Jimenez*, 595 F.2d at 1193. *See also* 8 C.F.R. § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection . . . ."). "As a result, inspections occurring *after* that fixed point in time would not fall within the 'inspection' contemplated in § 1325(a)(2). Indeed, were it otherwise, then no alien who is ultimately found and inspected by an immigration officer—even hours or perhaps days after the alien crossed into the United States—could be said to have "elude[d]" inspection." *Corrales-Vazquez*, 931 F.3d at 948 n.4.

18

And this very point highlights the problem with the government's approach. The government has no proof—and has not even alleged—that Espinoza-Cabrera eluded examination or inspection at any time or at any place. Instead, the prosecution appears to hinge on the government's claim that he had not been examined or inspected prior to November 1, 2025. But the mere fact that an alien found in the country has not been previously examined or inspected is not a crime. And when Espinoza-Cabrera was confronted by immigration officials, he submitted to an examination and inspection. So, there was no act of eluding examination or inspection.

Finally, the government argued that § 1325(a)(2) should be interpreted as a continuing offense because Congress authorized venue in the district of apprehension. To be sure, 8 U.S.C. § 1329 authorizes venue "at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended." Relying on the canon of constitutional avoidance, the government argued that § 1325(a)(2) should be deemed a continuing offense, otherwise § 1329 would be unconstitutional.

Contrary to the government's suggestion, the canon of statutory avoidance points in the other direction. Reading § 1329 to its further interpretive possibilities would authorize venue for every §§ 1325 and 1326 offense, not just 1325(a)(2). But none of these offenses, save § 1326's "found in," are continuing. *See supra* at 13 (citing

19

cases finding §1325(a) entry offenses non-continuing); *United States v. Ongaga*, 820 F.3d 152, 160 (5th Cir. 2016) (holding marriage fraud under § 1325(c) is non-continuing); *United States v. Rojas*, 718 F.3d 1317 (11th Cir. 2013) (same); *United States v. DiSantillo*, 615 F.2d 128, (3d Cir. 1980) (holding illegal reentry, as opposed to being "found in," under § 1326 is non-continuing).   Under the government's interpretation, then, § 1329 would authorize unconstitutional prosecutions.

Fortunately, there is an interpretation of § 1329 that avoids any constitutional concern: Congress exercised its constitutional authority to permit prosecution in the district of apprehension, and beyond the location where crime was committed, when applied to violations occurring in United States Territories.  This is because Article III grants Congress authority to establish venue any place it chooses in the case of a crime "not committed in any State."  U.S. Const., art. III, § 2.  Accordingly, a defendant eluding examination and inspection in a United States Territory who is later apprehended in a state could be constitutionally prosecuted in that state of apprehension.  *See Cuadro Soto*, 2026 WL 123220 at *4 (adopting this constitutional avoidance approached) (citing Eric S. Fish & Doug Keller, *Fabricating the Crime of Undocumented    Presence*,    19–20,    50    (Nov.    14,    2025)    (draft), https://ssrn.com/abstract=5750862.).  Therefore, this Court should hold that venue is improper in the Northern District of New York.

## II.   The evidence was insufficient to establish that Espinoza-Cabrera knowingly eluded examination or inspection at any time or any place.

### A.   Standard of Review

As noted above, "[t]he scope of the appeal [from a judgment issued by a magistrate] is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). The Second Circuit reviews *de novo* challenges to the sufficiency of the evidence. *See United States v. Guldi*, 141 F.3d 145, 444 (2d Cir. 2025). "[T]he standard of review is exactly the same regardless whether the verdict was rendered by a jury or by a judge after a bench trial." *McCarthy v. New York City Technical College of City Univ. of New York*, 202 F.3d 161, 166 (2d Cir. 2000), *cited in United States v. Pierce*, 224 F.3d 158, 164 (2d Cir. 2000). Therefore, this Court should review *de novo* whether the evidence was sufficient to support Espinoza-Cabrera's conviction.

### B.   Discussion

A defendant may not be convicted of a criminal offense except by proof that establishes guilt beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358 (1970). The relevant inquiry for determining sufficiency is "whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Autori*, 212 F.3d 105, 114 (2d Cir. 2000).

21

The evidence will be found sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

It is equally true, however, that when a fact to be proven is also an element of the offense, "it is not enough that the inferences in the government's favor are permissible." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). Instead, a court "must also be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *Id.* Therefore, if "the evidence viewed in the light most favorable to the prosecution gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,' then 'a reasonable jury must necessarily entertain a reasonable doubt.'" *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (quoting *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996)).

The stipulated facts were legally insufficient to establish Espinoza-Cabrera's guilt for three reasons. First, there is no evidence that Espinoza-Cabrera entered the United States through a port of entry, which is where examinations and inspections covered by § 1325(a)(2) occur. Second, there is no evidence that he knowingly engaged in an act of eluding when entering the country. Finally, contrary to the allegation in the information, the evidence established that Espinoza-Cabrera

22

submitted to immigration examination and inspection on the date charged in the information, November 1, 2025.

### 1.    There is no evidence that Espinoza-Cabrera came into the country through an open port of entry.

8 U.S.C. § 1325(a)(2) makes it a crime for an alien who eludes examination or inspection by immigration officials.  As noted above, to elude "generally contemplates a risk of exposure to, and subsequent escape from, the object being eluded." *Corrales-Vazquez*, 931 F.3d at 949. Under 8 U.S.C. § 1222(b), "examination" refers to medical examinations.  *Id.*  And under 8 U.S.C. § 1225(a)(3), "inspection" refers to background screening, searches, and other prerequisites for admission.  *Id*. Accordingly, an alien eludes examination or inspection only if "the alien's conduct occurs at a time and place where the alien is at risk of undergoing those processes in the first place.  Because those processes occur at open and operating ports of entry, the alien's criminal conduct—the 'elud[ing]'—must occur there as well."  *Id.*   Accordingly, to "'elude[ ] examination or inspection by immigration officers' in violation of § 1325(a)(2), the alien's conduct must occur at a designated port of entry that is open for inspection and examination."  *Id.  See also Rincon-Jiminez*, 595 F.2d at 1193-94 (holding that because the examination and inspection process 'are to take place at the time of entry, a fixed point in time," § 1325(a)(2) 'is consummated at the time an alien gains entry" without submitting to examination and inspection).

The stipulated facts in this case establish that Espinoza-Cabrera entered the

23

country "near" Miami, Florida. However, nothing in the record established where, exactly, entry near Miami, Florida was made. In the absence of any evidence that Espinoza-Cabrera's entry occurred at a designated port of entry that was open for inspection and examination, the evidence was insufficient to support a conviction. *See Vega*, 2025 WL 3558747 at \*4 (granting motion to dismiss because government "does not allege and the record does not support a finding that Defendant's conduct occurred at a port of entry, where inspections and examinations occur.").

2. **There is no evidence that Espinoza-Cabrera knowingly engaged in an act of eluding.**

As set forth in the Trial Stipulation, a conviction for violating § 1325(a)(2) required the government to prove beyond a reasonable doubt that Espinoza-Cabrera (1) was an alien and (2) knowingly eluded examination and inspection by immigration officers. While Espinoza-Cabrera conceded that he was an alien, there was nothing in the record to establish that he knowingly committed an act amounting to eluding. Congress did not define the verb "elude," so it is given its ordinary meaning:

> In 1929, as today, the verb "elude" was more commonly used to mean "avoid slyly, by artifice, stratagem, or dexterity," or "escape from in a covert manner." *Webster's New International Dictionary* 713 (1st ed. 1930); *see also, e.g., Concise Oxford Dictionary of* \*949 *Current English* 368 (2d ed. 1929) ("[e]scape adroitly from"); 3 *OED First* 97 ("escape by dexterity or stratagem," or "slip away from, escape adroitly from"); *Webster's New Collegiate Dictionary* 267 (6th ed. 1951) ("avoid adroitly, as by artifice; evade," or "escape the notice of"); *Webster's New World College Dictionary* 455 (2d ed. 1970) ("avoid or escape from by quickness, cunning, etc.," or "escape detection, notice, or understanding by"); *Webster's Third New International Dictionary* 738 (2002) ("avoid slyly or

24

adroitly," or "escape the notice or perception of").

*Corrales-Vasquez*, 931 F.3d at 944.  The ordinary meaning of "elude," however, "would not usually mean to simply avoid it—the avoidance generally contemplates some form of 'escape,' whether through 'quickness [or] cunning[ness].'"  *Id.* (alterations in original) (citation omitted).

The record below is entirely silent as to how Espinoza-Cabrera entered the country.  Instead, the Trial Stipulation establishes that Espinoza-Cabrera unlawfully entered the country, lacked authorization to be present in the United States, had no contacts with immigration officers, had not been previously inspected or examined by immigration authorities, and had not engaged the authorities to seek legal status.  A 56-57.  To be sure, these facts might establish that Espinoza-Cabrera failed to submit to examination and inspection upon entering the country.

But a violation of § 1325(a)(2) requires more than just a failure to submit to examination.  Indeed, as noted above, had Congress wanted to criminalize the mere failure to submit to examination, it could have done so.  *See supra* at 14-15.; *Corrales-Vasquez*, 931 F.3d at 949 n.5 (citations omitted).  In the absence of any evidence that Espinoza-Cabrera committed any act constituting "elud[ing]," the evidence was insufficient to support a conviction.

**3.     There is no evidence that Espinoza-Cabrera eluded examination and inspection on November 1, 2025.**

The information charged Espinoza-Cabrera with violating § 1325(a)(b) by

25

eluding examination and inspection on November 1, 2025. However, the record establishes that Espinoza-Cabrera acquiesced to authority on November 1, 2025, through the time he was first ordered to stop by Ogdensburg Police Officers, later questioned by a Border Patrol Agent, and finally fingerprinted at the Border Patrol Station. Indeed, at no time was Espinoza-Cabrera anything other than fully compliant. Therefore, even if venue were proper in the Northern District of New York, the evidence was legally insufficient to demonstrate that Espinoza-Cabrera knowingly eluded examination or inspection on November 1, 2025.

## Conclusion

This Court should vacate the judgment and dismiss the information.

March 9, 2026                        Respectfully submitted,

                                     */s/*
                                     Timothy E. Austin
                                     Assistant Federal Public Defender
                                     54 State Street, Suite 310
                                     Albany, New York 12207
                                     (518) 436-1850

                                     James P. Egan
                                     Assistant Federal Public Defender
                                     4 Clinton Square, 3rd Floor
                                     Syracuse, New York 13202
                                     (315) 701-0080

26

**Certificate of Service**

I, Timothy E. Austin, Esq., attorney of record for the above-named defendant, hereby certify that on March 9, 2026, I electronically filed the foregoing Defendant-Appellant's Memorandum of Law on Appeal and Appendix with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to Douglas Collyer, Assistant U.S. Attorney.

/s/
Timothy E. Austin, Esq.
Assistant Federal Public Defender
Bar Roll No. 508098
54 State Street, Suite 310
Albany, New York 12207
(518) 436-1850
tim_austin@fd.org

27